**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **STATE FARM LIFE INSURANCE** | : | |
| **CO.,** | : | **Civil No. 3:14-CV-1321** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Judge Mariani)** |
| | : | |
| **JOHN MICHAEL TEDESCO, TINA** | : | **(Magistrate Judge Carlson)** |
| **TEDESCO, and JOHN FLEMMING** | : | |
| **as Administrator of the ESTATE** | : | |
| **OF BARBARA RABINS, deceased,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.   Introduction

This case presents an extraordinary circumstance:  John and Tina Tedesco seek to re-open default judgments entered against them and in favor of the Estate of Barbara Rabin, in an insurance policy interpleader action.  (Docs. 36 and 38.)  Those default judgments were entered in this action after the Tedescos repeatedly failed over the span of many months to litigate their entitlement to these insurance proceeds in this case.  That wholesale failure to litigate on the Tedescos part may be attributed to the circumstances of Rabins' death; specifically, the fact that the Tedescos have been convicted of third degree murder in connection with Rabins' death may have deterred

these from fully litigating their continued entitlement to the proceeds of their victim's insurance policy. Even today, as they seek to set aside these default judgments, the Tedescos do not seem prepared to litigate this case. Instead, they invite us to re-open the case, deny the estate of their murder victim access to these funds, and then stay this litigation indefinitely as they pursue appeals and post-conviction litigation in their state criminal case, a criminal case that concluded with their convictions on murder, theft, neglect, and evidence tampering charges.

On these facts–where the Tedescos wish to re-open this action notwithstanding their undisputed defaults and the immutable fact that they have been convicted of killing Barbara Rabins–we recommend that the motions to reopen default judgments be denied.

## II.    Statement of Facts and of the Case

This is an insurance policy interpleader action filed by State Farm Life Insurance Company in July of 2014. This interpleader action arose out of the murder of the insured, Barbara Rabins, who died while in the care of John and Tina Tedesco. At present, the criminal culpability of John and Tina Tedesco in the death of their aunt, Barbara Rabins has been adjudicated in state court. Court records reveal that in October 2013, John and Tina Tedesco were charged in the Court of Common Pleas of Monroe County with a battery of criminal offenses relating to the physical and

financial exploitation of Barbara Rabins. These state criminal charges included: third degree murder, neglect of a care dependent person, conspiracy, theft and tampering with evidence. Commonwealth v. Tedesco, CP-45-CR-2229-2013. Following protracted pretrial proceedings, which included guilty pleas by both John and Tina Tedesco, pleas which were later recanted, this murder case proceeded to trial in August of 2015. At trial, the defendants were convicted on all charges, and on October 26, 2015, Tina and John Tedesco were sentenced to an aggregate 168 to 336 months in prison for their roles in the neglect, exploitation and murder of their aunt.

In its July 2014, interpleader complaint, State Farm alleged that it issued a life insurance policy with a face value of $100,000 on the decedent, Barbara Rabins. (Doc. 1, ¶7.) The application which secured the policy of insurance identified Rabins' niece and nephew, John Michael Tedesco and Tina Tedesco as the primary beneficiaries of the policy and there were no secondary beneficiaries named under the policy. (Doc. 1, ¶8.)

The complaint then described the tragic circumstances of Barbara Rabins' death in the following terms: "On August 18, 2011, Barbara Rabins' body was found in the livingroom of John Tedesco and Tina Tedesco. Upon information and belief, Rabins was in a wheelchair, wearing a soiled diaper with her body covered in sores and open wounds and her hands and fingernails caked with her own feces. Following

3

investigation, the District Attorney of Monroe County, Pennsylvania, charged John

Tedesco and Tina Tedesco with third degree murder for the death of Barbara Rabins."

(Doc. 1, ¶9.)  Further, the complaint alleged that:

> As Tina and John Tedesco were the owner and successor owner of the
> policy as set forth in the application for the policy, and no change of
> ownership ever was filed with State Farm, to the extent they qualify as
> "you" within the meaning of the policy the Pennsylvania's Slayer Act
> also precludes them from recovering in that capacity in the event they
> are found to be slayers of Barbara Rabins.

(Doc. 1, ¶15.)

In this complaint, State Farm alleged that it:  "has requested that John Tedesco

and Tina Tedesco submit Life Claim Information Request Forms if they intend to

claim entitlement to the policy proceeds but to date neither has done so nor, however,

has either disclaimed any interest in the policy proceeds."  (Doc. 1, ¶18.)  Thus,

Rabins' accused killers refused to either claim, or disclaim, the insurance proceeds

that were available to them under the policy of the elderly women they were accused

of murdering.  While the Tedescos would not clearly state whether they sought to

obtain this financial benefit in the wake of Rabins' murder, Rabins' Estate made

claim to State Farm for the payment of the policy proceeds.  (Doc. 1, ¶17.)

Indeed, in the Answer, Affirmative Defenses and Cross Claims filed by the

Estate in this case on August 7, 2014,  the Estate insisted that the Tedescos could not

profit from this murder, and alleged that: "Defendants John M. Tedesco and Tina Tedesco willful and unlawful killed Barbara E. Rabins as more fully defined under the Slayer's Act 20 Pa.C.S.A. §8801, et seq. and the case law as developed based upon the Slayer's Act. [Therefore] Defendants John M. Tedesco and Tina Tedesco are barred under the laws of the Commonwealth of Pennsylvania from receiving any of the subject insurance proceeds." (Doc. 10, ¶¶ 26-28.)

For their part, John and Tina Tedesco never responded to this interpleader action. Accordingly, in September of 2014, Rabins' estate moved for the entry of a default judgment against the Tedescos. (Docs. 11-15.) While these state criminal charges were pending against the Tedescos, this Court prudently stayed this interpleader action. However, upon the jury's finding in the Court of Common Pleas of Monroe County that the Tedescos had neglected, killed, and financially exploited Rabins, and the Tedescos' conviction and sentencing on these state criminal charges, this Court moved forward with proceedings on the Rabins Estate's request for entry of default judgments against Rabins' convicted killers.

As part of this process, on November 12, 2015, the district court put John and Tina Tedesco on notice that it intended to conduct a hearing relating to this motion for entry of default on December 15, 2015. Despite receiving one month's notice of this hearing, neither John nor Tina Tedesco interposed any objection to the entry of

default judgment against them.  Accordingly, on December 15, 2015, the Court entered a default judgment against Rabins' convicted killers, and in favor of Rabins' Estate on this insurance policy claim.  (Doc. 34.)

Several weeks then passed before John and Tina Tedesco filed belated motions to set aside these default judgments.  (Doc. 36 and 38.)  These motions are spare pleadings.  They do not contest the fact of the Tedescos' default, and they do not dispute in any meaningful way the contention that Pennsylvania's Slayer Act forbids murderers from profiting from the killing of another.  Instead, the Tedescos simply advance the startling and amoral proposition that they are entitled to the proceeds of this policy because the woman they murdered named them as the policy beneficiaries before they neglected and killed her.  On the basis of this assertion, and their insistence that they are pursuing post-conviction relief in this state murder case, the Tedescos seek to re-open this case and then stay these proceedings indefinitely while they continue to litigate their murder convictions.

These motions are fully briefed and ripe for resolution.  For the reasons set forth below, it is recommended that the motions be denied, and the Court refuse to entertain further efforts by Rabins' killers to profit from her death.

### III.   Discussion

    **A.**    **Rabins' Convicted Killers May Not Set Aside the Default Judgment Denying Them The Proceeds of Their Victim's Insurance Policy**

Default judgments are governed by Rule 55 of the Federal Rules of Civil Procedure.  Under Rule 55 a default judgment may only be entered when the party against whom the default judgment is sought was served and "has failed to plead or otherwise respond." Rule 55(a), F.R.Civ.P.  Here it is entirely undisputed that neither John nor Tina Tedesco has ever responded to this interpleader complaint despite having nearly two years in which to respond.  Thus, the threshold requirements for entry of default judgment are fully satisfied here.

Notwithstanding their failure to respond, the Tedescos seek to set aside these default judgments and stay this case indefinitely.  In ruling upon requests to set aside default judgments it is well-settled that these decisions are:

> [L]eft primarily to the discretion of the district court. Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 244 (3d Cir.1951). We recognize, however, that this Court does not favor entry of defaults or default judgments.  We require doubtful cases to be resolved in favor of the party moving to set aside the default judgment "so that cases may be decided on their merits." Id. at 245.  See also Gross v. Stereo Component Systems, Inc., 700 F.2d 120, 122 (3d Cir.1983); Feliciano v. Reliant Tooling Company, Ltd., 691 F.2d 653, 656 (3d Cir.1982); Farnese v. Bagnasco, 687 F.2d 761, 764 (3d Cir.1982).  Nevertheless, we do not set aside the entry of default and default judgment unless we determine that the district court abused its discretion.  We require the district court to consider the following factors in exercising its discretion

7

. . . :  (1) whether the plaintiff will be prejudiced; (2) whether the defendant has a meritorious defense; (3) whether the default was the result of the defendant's culpable conduct. <u>Gross v. Stereo Component Systems, Inc.</u>, 700 F.2d at 122; <u>Feliciano v. Reliant Tooling Company, Ltd.,</u> 691 F.2d at 656; <u>Farnese v. Bagnasco</u>, 687 F.2d at 764.

<u>United States v. $55,518.05 in U.S. Currency</u>, 728 F.2d 192, 194-95 (3d Cir. 1984)

In this case, we find that all of these discretionary factors favor denial of these motions to reopen the default judgments entered agianst John and Tina Tedesco, who have been convicted of neglecting, exploiting and killing Barbara Rabins.

Turning first to the question of whether the default judgments were the result of the Tedescos' culpable conduct, we find that the entry of these default judgments were in every sense a consequence of culpable conduct by these parties.  At the outset, it is undisputed that John and Tina Tedesco have never responded to the Estate's Claims, and have, therefore, been in default for the past two years.  Further, the only justification given for this wholesale failure to respond is the fact that the Tedescos were charged with killing Rabins.  While the alleged involvement of John and Tina Tedesco in Rabins' murder may have justified a stay of these proceedings, since October of 2015, the Tedescos have stood convicted of these crimes committed against the woman whose insurance policy proceeds they now seek.  By any measure, these circumstances disclose that these default judgments stem directly from the Tedescos' culpable–and criminal–conduct.

8

The second guiding benchmark we must consider in the analysis of these motions to re-open default judgments is whether the Tedescos have a meritorious defense to this action. United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984). On this score:

> A meritorious defense is one which, " 'if established at trial, would completely bar plaintiff['s] recovery.' " Momah v. Albert Einstein Medical Center, 161 F.R.D. 304, 307(E.D. Pa.1995) (citing Foy v. Dicks, 146 F.R.D. 113, 116 (E.D. Pa.1993). To fulfill this requirement, the defendant's answer and pleadings must raise specific *facts* which would allow him to advance a complete defense. Momah, 161 F.R.D. at 307; see $55,518 in U.S. Currency, 728 F.2d at 196. These specific facts must go beyond a general denial so that the court has some basis for determining whether the defendant can make out a complete defense. Momah, 161 F.R.D. at 307 (citing $55,518.05 in U.S. Currency, 728 F.2d at 195.)

Mike Rosen & Associates, P.C. v. Omega Builders, Ltd., 940 F.Supp. 115, 118 (E.D.Pa.1996).

Judged by these standards we find that the Tedescos have not shown that they possess a meritorious defense in this case. Quite the contrary, it has long been the law of Pennsylvania that killers may not profit from murder. This bedrock principle is embodied in Pennsylvania's Slayer's Act, which forbids a person who participates in the "willful and unlawful killing" of another person from profiting financially. 20 Pa.C.S. §8801, *et seq*. A "slayer" is defined by the Act as "any person who participates, either as a principal or as an accessory before the fact, in the willful and

unlawful killing of any other person." 20 Pa. C.S. §8801.  Under Pennsylvania law, a person who is convicted of third degree murder is considered a "slayer" for purposes of the Slayer's Act.  In re Trust Estate of Jamison, 431 Pa. Super. 486, 491, 636 A.2d 1190, 1192 (1994); see also In re Estate of Bartolovich, 420 Pa. Super. 419, 616 A.2d 1043 (1992)(Voluntary manslaughter conviction bars recovery under Slayer's Act); In re Klein's Estate, 474 Pa. 416, 425, 378 A.2d 1182, 1186 (1977)(distinguishing murder from involuntary manslaughter under the Slayer's Act). Under the Act, "[n]o slayer shall in any way acquire any property or receive any benefit as the result of the death of the decedent." 20 Pa.C.S. § 8802.  As for insurance proceeds, like the proceeds at issue here, the Act provides that a slayer is denied the right to insurance proceeds payable to the slayer as a beneficiary under the insurance policy on the life of a decedent.  If there is no secondary beneficiary, then the insurance proceeds are paid to the decedent's estate.  20 Pa.C.S. §8811(a).

Culpability for a slaying under the Act can be established by reference to the outcome of the underlying state criminal court proceedings.  Thus, '[t]he record of his conviction of having participated in the willful and unlawful killing of the decedent shall be admissible in evidence against a claimant of property in any civil action." 20 Pa. C.S. § 8814.  Further, by its terms "the Act shall be construed broadly in order

to effect the policy of this State that no person shall be allowed to profit by his own wrong, wherever committed." 20 Pa. C.S. § 8815.

In sum, "[t]he primary policy that the Pennsylvania Slayer Act seeks to enforce is found in the maxim 'Nullus commodum capere potest de injuria sua propia—No man can take advantage of his own wrong.' Restatement of Restitution, § 187, comment a (1937)." In re Trust Estate of Jamison, 431 Pa. Super. 486, 490, 636 A.2d 1190, 1192 (1994).  Given the broad remedial purposes served by the Act, the Tedescos cannot demonstrate that they have a meritorious defense which would defeat the Estate's claim to these insurance proceeds.  Quite the contrary, the Tedescos have been convicted of third degree murder, neglect and theft in connection with Rabins' death.  The record of these convictions is competent evidence in any Slayer's Act proceeding, 20 Pa. C.S. § 8814, and third degree murder is a disqualifying offense under the Act, which prohibits the offender from enjoying insurance benefits from the victim of the murder.  In re Trust Estate of Jamison, 431 Pa. Super. 486, 491, 636 A.2d 1190, 1192 (1994); see also In re Estate of Bartolovich, 420 Pa. Super. 419, 616 A.2d 1043 (1992) (Voluntary manslaughter conviction bars recovery under Slayer's Act); In re Klein's Estate, 474 Pa. 416, 425, 378 A.2d 1182, 1186 (1977) (distinguishing murder from involuntary manslaughter under the Slayer's Act).

While the Tedescos claim that they seek these benefits solely for their children, the Act simply does not permit this course.  Quite the contrary, under the Act: "Insurance proceeds payable to the slayer as the beneficiary or assignee of any policy or certificate of insurance on the life of the decedent, or as the survivor of a joint life policy, shall be paid to the estate of the decedent, *unless the policy or certificate designates some person not claiming through the slayer as alternative beneficiary to him*." 20 Pa. C.S. § 8811 (a)(emphasis added).  Here, there is no certificate or policy designating the Tedescos' children as alternate beneficiaries under Barbara Rabins' insurance policy.  Instead, the Tedescos premise their request for payment of these benefits to their children upon a path that is forbidden by statute.  They, in effect, seek to have their children claim the benefits through them as the slayers.  The Act forbids such a form of recovery, and does not allow killers to kill, and then direct the financial benefit of their murderous conduct to some third party of their choosing.[1]

---

[1]In their pleadings, the Tedescos decry the hardship visited upon their children by the death of Rabins, and their subsequent conviction for Rabins' death. While these events are doubtless tragic for the Tedesco children, who have lost a great aunt and their parents due to these criminal, and fatal, acts of neglect, the greater tragedy here is the death of Barbara Rabins, who died in a state of neglect due to what has been found to be the criminal acts of John and Tina Tedesco. Under Pennsylvania law, this greater human tragedy dictates that the Tedescos may not profit directly, or their children benefit indirectly through them, from this criminal act.

Finally, the Tedescos' efforts to re-open this case so they may seek either: (1) an open ended stay of proceedings as they pursue post-conviction relief; or (2) to re-litigate this murder case in the guise of a civil interpleader action, are also unavailing. At the outset, in this case the judgments of conviction entered against John and Tina Tedesco for third degree murder "conclusively bar[] the slayer's right to share in the decedent's estate. See also In re Estate of Klein, 474 Pa. 416, 421 n. 13, 378 A.2d 1182, 1184 n. 13 (1977) (dicta)." In re Estate of Bartolovich, 420 Pa. Super. 419, 421, 616 A.2d 1043, 1044 (1992). Therefore, the Tedescos are not entitled to retry this murder case in a civil setting. Id. Likewise, a court is not required to indefinitely delay the result dictated by the Slayer's Act at the request of a convicted killer while that murderer pursues post-conviction relief. In re Estate of Burkland, No. CIV.A. 11-5024, 2013 WL 327622, at *5 (E.D. Pa. Jan. 29, 2013). There simply is no legal support for the novel proposition the Tedescos invite us to embrace, the notion that a convicted killer may indefinitely avoid the legal result dictated by the Slayer's Act as the murderer pursues post-conviction relief.

Indeed, we note that re-opening this case and permitting some open-ended stay of proceedings would be antithetical to the third guiding principle we must consider when exercising our discretion in ruling upon a motion to re-open a default judgment: whether the moving party will be prejudiced by setting aside the default judgment.

13

United States v. $55,518.05 in U.S. Currency, 728 F.2d 192, 194-95 (3d Cir. 1984).

Here, we find that Rabins' Estate and its beneficiaries would suffer a palpable prejudice if these motions were granted.  On August 18, 2011, Barbara Rabins died, the victim of what has been found to be criminal neglect by John and Tina Tedesco. For more than five years Rabins' estate, and its beneficiaries, have waited as the issues of criminal culpability surrounding her death were litigated by John and Tina Tedesco.   That litigation concluded in 2015 with a finding that the Tedescos murdered Rabins.  This finding wholly disqualifies the Tedescos from profiting from their criminal conduct, and the Tedescos have never contested this interpleader action or responded to the Estate's claims.  Instead, the Tedescos simply seek an open-ended delay of the outcome otherwise compelled in this case by their murder convictions. After these years of litigation, the Estate of Barbara Rabins, and the beneficiaries of that estate, have a right to some finality in this matter, and will be severely prejudiced if this Court re-opens this case and stays this litigation indefinitely.

In sum, we find that all of the discretionary factors which guide our judgment in this field favor denial of these motions by convicted killers to re-open this insurance interpleader case so they may belatedly pursue claims for the insurance policy proceeds of the woman they neglected and killed.  Therefore, these motions should be denied.

## IV. <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the motions of John and Tina Tedesco to set aside these default judgments, (Docs. 36 and 38.) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 12th day of October 2016.

<u>*S/Martin C. Carlson*</u>
Martin C. Carlson
United States Magistrate Judge